UNITED STATES *v.* BERNARD, JUDAE & Co. (No. 2835)[1]

United States Court of Customs Appeals, May 7, 1927

*Charles D. Lawrence,* Assistant Attorney General (*Kenneth G. Osborn,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument March 17, 1927, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in this appeal from the United States Customs Court consists of what is known as "Doctor West's toothbrushes, hard." They were classified and assessed as articles in chief value of collodion or celluloid (compounds of pyroxylin) under paragraph 31 of the Tariff Act of 1922 and are claimed by the appellee

---

[1] T. D. 42231.

to be dutiable as toothbrushes under paragraph 1407 of the act. Inasmuch as there is no controversy that collodion or celluloid is a component material, that if it is the one of chief value the brushes were properly assessed, and that if not so it should have been classified as claimed by the importer, we do not further refer to these paragraphs.

The issue of fact here is, What is the component material of chief value in these toothbrushes? The handles are of celluloid and the remainder of the brushes are bristles, except certain wire staples, the value of which is not shown and is not regarded by counsel as of sufficient consequence to be considered. The court below found the bristles to be such component material.

Paragraph 1460 of the act provides that—

The words "component material of chief value," * * * shall be held to mean that component material which shall exceed in value any other single component material of the article; and the value of each component material shall be determined by the ascertained value of such material in its condition as found in the article.

Counsel do not disagree that the general rule for the determination of the component material of chief value is as stated in numerous decisions, among others, *Seeberger v. Hardy*, 150 U. S. 420; *Seeberger v. Schlesinger*, 152 U. S. 581; *United States v. Meadows*, 2 Ct. Cust. Appls. 143; *United States v. Johnson & Johnson*, 154 Fed. 39; *United States v. Hoeninghaus*, 137 Fed. 478.

The rule to be derived therefrom is that the value of the materials of which an article is composed shall be ascertained at the time when they are in such condition that nothing remains to be done to them except putting them together.

Importer, however, urges that in this case, it appearing that the brushes are made by inserting the bristles in the celluloid handles, then binding them in place and trimming them, the expense of these operations may be added to the value of the bristles before they were thus inserted in the handles in order to determine their value in the finished brushes.

The cited cases do not support that view. In *United States v. Johnson & Johnson, supra*, the court said:

It is true that the value of the material is to be ascertained in its condition as found in the article; but this means in the state in which it is found when it is originally put into the article, and not in the state to which it may be brought after it has been put there by the labor and skill subsequently bestowed upon it.

In *United States v. Meadows, supra*, discussing the same question we said:

In each case, however, inquiry will show at what stage the component parts have been made ready to be united to form the complete whole, and at that stage its condition will be "its condition as found in the article."

The reason for this is obvious and its applicability at once apparent in this case. The uniting of the component materials to make the finished article is a labor bestowed upon the article itself and not upon the component material. These bristles were ready to become a part of the brushes before they were inserted in the handle. The insertion of the same, the binding them in place with wire staples, as the evidence shows was done, and the subsequent trimming all were labor upon the brush and not upon the bristles, within the meaning of the statute.

The only evidence of the comparative value of the celluloid and bristles was given by importer's witness, who was the only one who testified in the case. His testimony was directed to what importer actually paid for the finished brushes and also to the comparative value of their components. The latter was based largely on prices quoted by various producers thereof. He said on direct examination, referring to the finished brushes:

The price which we actually paid and are still paying is 14.90 yen for the medium texture and 15.90 yen for the hard texture.

Q. And you say what they quoted the celluloid handles for, both medium and hard, was 6.70?—A. 6.70; yes, sir.

This evidence would tend to show that the cost of the bristles was 9.20 *yen*. On cross-examination he testified that on Doctor West's medium brush "the bristle quotation was 4.70, and on the hard 5.66."

Q. And the quotation on the handles was 6.70?—A. Yes.

The tendency of this evidence would be to show that the value of the finished brush was 5.66 and 6.70, or 12.36 *yen*.

On redirect examination he said the price was—

For the medium, the quotation would be 7.20 yen and on the hard 8.16 yen.

Q. That is, for the bristles in the condition you find them in the imported article?—A. Yes, sir.

Q. As against the 6.70 for the handles?—A. Yes, sir.

This evidence would seem to establish that the cost of the finished brush was 14.86 *yen* instead of 15.90 *yen* as he first stated.

On recross-examination he was asked:

Q. Is that 6.70 for the handles in the finished condition?—A. As you see them in the brush; yes, sir.

Q. Do you know how they put the bristles in these brushes?—A. Do I know how it is done?

Q. Yes.—A. Yes. It is put in by means of machines. They pick up little tufts of bristles and staple them in with a flat wire staple.

Q. That quotation includes that labor of putting the bristles in?—A. Oh, yes.

The Customs Court quoted in its opinion the foregoing direct and cross examination, referred to the redirect examination, but did not mention the recross-examination. It found the bristles to be the component material of chief value of these hard brushes and sus-

tained the protest. We think the board erred in its interpretation of the evidence and perhaps misapprehended the law applicable to such cases hereinbefore pointed out.

The classification of the collector raised the presumption that celluloid was the component material of chief value. The recited evidence shows that the witness first testified that the quoted value of the bristles for the hard brushes was 5.66 *yen* and for the handles 6.70 *yen;* that later he said the quotation for the bristles was 8.16 *yen;* and that still later, on recross-examination, he said that this included the labor of putting them in the handles, the method of which he explained but the cost of which he did not mention. Apparently, this testimony means that 8.16 *yen* less 5.66 *yen*, which he said the bristles cost, leaves 2.50 *yen* as the cost of inserting the bristles, including the value of the staples and finishing the brushes after the handles and the bristles were ready to be put together. Whether this deduction is or is not precisely correct, it is clear that the testimony failed to establish that when the handles and bristles were ready to be put together the bristles were of a value greater than the handles and therefore it did not overcome the presumed correctness of the collector's classification. This view of the case makes it unnecessary to consider any other of the points raised on argument.

The judgment of the Board of General Appraisers is *reversed*.